**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

FILED

>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>

2025 JUN -9 P 12: 11

DORA L. ADKINS, PRO SE
P.O. BOX 3825
MERRIFIELD, VA 22116

Plaintiff (*pro se*),

V.     CIVIL ACTION NO.: 1:25cv-973

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERISTY
REGISTERED AGENT / REGISTERED OFFICE
Virginia Polytechnic Institute and State University
PO Box 482
Blacksburg, VA 24068

Defendant.
>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>

**PROPOSED (BEYOND BEING AN) EMERGENCY COMPLAINT**:

COMES NOW the Plaintiff, Dora L. Adkins, *pro s*e, provides a

"Proposed Emergency Complaint," against the Defendant, Virginia Polytechnic

Institute and State University. The "Proposed Emergency Complaint," include the

following: One Count and One Claim: Count #1: Intentional Infliction of

Emotional Distress; Claim #1: Punitive Damages combined for Damages of $2

Billion Dollars as a *Prima Facie* Case Cause of Action; states as follows:

**INTRODUCTION TO PRIMA FACIE CASE:**

1. Plaintiff is filing this "Proposed Emergency Complaint," because

1

Plaintiff is **Beyond an Emergency State**. Plaintiff cannot live *without* food to eat or a place to stay and/or with both extremely and severely compromised with food and chemical poisoning and extreme filth and/or contamination inside a paid-for Guest Room, that Plaintiff have lived outdoors for **43-days and nights**. Plaintiff referenced the living-outdoors for **43-days and nights** and being **MOLD poisoning** at the LA/Fitness Gym located in Herndon, VA for **32 consecutive days**. These potential lawsuits such as against Fitness International LLC (Plaintiff already filed); **Whole Foods Market Group, Inc.** for attempted food poisoning on <u>Sunday, June 8, 2025</u>; and issues of someone from **Wegmans Food Markets, Inc.,** following Plaintiff out by Plaintiff's vehicle and taking cell photos on <u>Saturday, June 7, 2025</u>, has nothing to do with the lawsuit being filed against the Defendant, Virginia Polytechnic Institute and State University, but EVERYTHING to do with Plaintiff being BEYOND AN EMERGENCY FOR FILING A PROPOSED EMERGENCY COMPLAINT.

2. In May 2025, Plaintiff sought permission to complete some required Word-processing from two librarians for the Defendant, Virginia Polytechnic Institute and State University, who Plaintiff have known for over 20-Years when Plaintiff was a student at the UVA/VT Extension located in Falls Church, VA. Permission was provided to the Plaintiff to use the newly built Virginia Polytechnic Institute and State University located in Alexandria, VA and Plaintiff

was told Plaintiff was more than welcomed to come to Virginia Polytechnic

Institute and State University. Plaintiff have been going just about every day to

complete some legal documents via word processing and since the students

attending Virginia Polytechnic Institute and State University are out for the

summer, the setting at Virginia Polytechnic Institute and State University has been

ideal with total quietness except the noise that has to be for cleaning of the rooms

and hallways and etc., in the evenings.

3.  The week before these two incidents a male set outside Virginia

Polytechnic Institute and State University at 2:30 a.m., and appeared to be waiting

for Plaintiff to leave because as soon as Plaintiff left through the Front Entrance,

the person with a hood on his head immediately went back inside Virginia

Polytechnic Institute and State University. The same week the employee security

guard working late for Virginia Polytechnic Institute and State University came

into the workspace Plaintiff was working and asked if Plaintiff left a laptop

computer and backpack in another workspace and Plaintiff took one second and

pointed to Plaintiff's laptop Plaintiff was working on. Plaintiff also added that the

computer and backpack had been there for 3-4 hours. The security guard indicated

he would take care of it and Plaintiff saw the security guard remove both items.

The back pack appeared to have belonged to the security guard because as Plaintiff

left the back pack was sitting out behind the front desk located at the entrance of

Virginia Polytechnic Institute and State University. The same week Plaintiff

observed a student standing behind Plaintiff's workspace in attempt to see what

Plaintiff was working on and/or to gain access to Plaintiff's laptop computer.

Plaintiff quickly NEVER worked with Plaintiff's back to the outside of the

workspace afterward and immediately moved to another floor. The same person

came to the floor Plaintiff had moved to see where Plaintiff had moved to.

4. On Friday, June 6, 2025, allegedly a professor stood very near where

Plaintiff was working but was also an entrance into a nearby classroom to see what

Plaintiff was working on. The second time he passed the Plaintiff, Plaintiff moved

so that Plaintiff's laptop could not be viewed from outside of the workspace

Plaintiff was working in.

5. On Monday, June 2, 2024, Plaintiff went to Virginia Polytechnic Institute

and State University for 1-Hour to complete a legal document before mailing it and

when Plaintiff returned to Plaintiff's vehicle Plaintiff's vehicle had been sprayed

with a chemical poisoning (to the Plaintiff). It was extremely upsetting to Plaintiff,

but Plaintiff quickly went to a car wash to have the chemical poisoning washed off

Plaintiff's vehicle that was on the glass surfaces and the paint surfaces. Plaintiff

did not report the problem to ANYONE at Virginia Tech. Plaintiff returned to

Virginia Polytechnic Institute and State University in the evening on Monday, June

2, 2024, to complete more legal documents.

6.  On Friday, June 6, 2024, at approximately 10:30 p.m., Plaintiff's chosen work space at Virginia Polytechnic Institute and State University was sprayed with a chemical and the smell was horrific. Plaintiff had gone to the nearby restroom and took Plaintiff's unsweetened tea and Essentia water and closed Plaintiff's document on the laptop computer because Plaintiff had a previous warning from GOD that as soon as Plaintiff leave the workspace, entry into the workspace is made by someone at Virginia Polytechnic Institute and State University. The custodial staff for Virginia Polytechnic Institute and State University were working nearby and, in the classroom, directly behind the workspace Plaintiff was in.

7.  Plaintiff informed the Front Desk the following: "There are some mean people in this world," which was related to the chemical spayed in Plaintiff workspace room. The Front Desk black male employee replied, "And for no reason." Plaintiff then went out to Plaintiff's vehicle to find Plaintiff's vehicle sprayed with chemical poisoning. Plaintiff moved the vehicle from beside a vehicle parked on the opposite side to a parking space no other vehicles were parked. Plaintiff informed the Security guard working at the Front Desk that Plaintiff would be returning and then went to a work space located on the second floor to complete two applications that Plaintiff needed to mail the two detailed applications on Saturday, June 7, 2025.

8.  Two security guards for the Front Desk walked pass Plaintiff on the

5

second floor and went to the end of the hallways and proceeded to speak as loudly as possible. The two security guard employees left allegedly thinking the one on duty at the time couldn't have seen Plaintiff's vehicle being sprayed with chemical poisoning. The second black male security had left completely and/or was not at the Front Desk. The late-night shift black male security guard arrived at the exact time Plaintiff parked her vehicle in a different location at Virginia Polytechnic Institute and State University and was with the Security guard Plaintiff made the statement to about "People being mean."

9.    There was an individual at the entrance of Virginia Polytechnic Institute and State University when Plaintiff left at 12:30 a.m., on early Saturday morning, June 7, 2025. The two security guards on the second floor and away from the security desk most likely alerted the individual standing at the entrance of Virginia Polytechnic Institute and State University when Plaintiff was leaving the second floor because Plaintiff saw the individual inside the vehicle attempting to hide down in the driver's seat that was parked by Plaintiff's vehicle and allegedly took cell telephone photos of Plaintiff. Plaintiff left out from a different direction and then quickly returned to ensure Plaintiff was not mistaken about the individual hiding in the vehicle and allegedly the same person standing outside of Virginia Polytechnic Institute and State University waiting for Plaintiff to leave.

10.  It was early in the morning (12:30 a.m.) on June 7, 2025, so Plaintiff did

not have the ability to take Plaintiff's vehicle to a carwash to remove the chemicals and had to endure inhaling the deadly chemicals (to the Plaintiff) overnight. On Saturday, June 7, 2025, later into the day Plaintiff took Plaintiff's vehicle to a carwash to have the chemicals removed from Plaintiff's vehicle.

11. The employee for the carwash sprayed the soap onto the front window of Plaintiff's vehicle but not all of the glass surfaces and as he had with the car before Plaintiff's vehicle, did not use the powerful hose to hose down Plaintiff's vehicle with water. GOD made it possible by also producing rainwater to wash away the chemical poisoning sprayed onto Plaintiff's vehicle.

12. <u>Plaintiff's physical injuries</u> include a brain injury that caused the left side of the brain to become swollen and severely injured with great pain, so much so putting on and taking off reading glasses was painful; excruciating migraine headaches, and rector bleedings to get rid of the migraine headaches. The chemicals poisoning spayed into the workspace at Virginia Polytechnic Institute and State University Plaintiff was working in got into Plaintiff's hair and skin which produces an unbelievably overall bad smell on Plaintiff's person. Plaintiff is suffering EXTREME emotional distress because without GOD'S MIRACLES Plaintiff would be DEAD from the chemical poisoning. Plaintiff have provided all of the facts in this Emergency Complaint while Plaintiff worked in a workspace at Virginia Polytechnic Institute and State University, like telling a story no parts are

7

left out but the lawsuit is about the crime of intentionally spraying Plaintiff with a chemical poisoning and intentionally spraying Plaintiff's vehicle with chemical poisoning.

13. It is tortious for the Plaintiff's workspace at Virginia Polytechnic Institute and State University to be sprayed with chemical poisoning.

14. It is tortious for Plaintiff's workspace at Virginia Polytechnic Institute and State University to be entered into while Plaintiff is away at the restroom, but still working in the workspace.

15. It is tortious for Plaintiff's vehicle to be sprayed intentionally with chemical poisoning twice at Virginia Polytechnic Institute and State University; on Monday, June 2, 2025, and Friday, June 6, 2025, with the intent to bring about DEATH to the Plaintiff.

16. It is tortious for Plaintiff to have non-stop and unwanted cell photos taken of the Plaintiff by unknown individuals at Virginia Polytechnic Institute and State University. GOD alerts Plaintiff each time a cell photo is being taken.

17. It is tortious for Plaintiff to be questioned by a security guard at Virginia Polytechnic Institute and State University about someone else's belongings when clearly it was known to the Security guard that Plaintiff worked on the one laptop computer carried by the Plaintiff directly by the security desk at Virginia Polytechnic Institute and State University 15-20 times prior.

18. <u>It is tortious</u> for a student and/or a professor to allegedly attempt to look onto Plaintiff's laptop to see what Plaintiff is working on and/or to access Plaintiff's laptop computer.

19. **<u>FACTUAL STATEMENTS</u>**:

20. <u>It is a Fact</u>: Plaintiff is filing this "Proposed Emergency Complaint," because Plaintiff is **Beyond an Emergency State**. Plaintiff cannot live *without* food to eat or a place to stay and/or with both extremely and severely compromised with food and chemical poisoning and extreme filth and/or contamination inside a paid-for Guest Room, that Plaintiff have lived outdoors for **43-days and nights**. Plaintiff referenced the living-outdoors for **43-days and nights** and being **MOLD poisoned** at the LA/Fitness Gym located in Herndon, VA for **32 consecutive days**. These potential lawsuits such as against Fitness International LLC (Plaintiff already filed a lawsuit); **Whole Foods Market Group, Inc.** for attempted food poisoning on **<u>Sunday, June 8, 2025</u>**; and issues of someone from **Wegmans Food Markets, Inc.,** following Plaintiff out by Plaintiff's vehicle and taking cell photos on **<u>Saturday, June 7, 2025</u>,** has nothing to do with the lawsuit being filed against the Defendant, Virginia Polytechnic Institute and State University, but EVERYTHING to do with Plaintiff being BEYOND AN EMERGENCY FOR FILING A PROPOSED EMERGENCY COMPLAINT.

21. <u>It is a Fact</u>: In May 2025, Plaintiff sought permission to complete some

required Word-processing from two librarians for the Defendant, Virginia

Polytechnic Institute and State University, who Plaintiff have known for over 20-

Years when Plaintiff was a student at the UVA/VT Extension located in Falls

Church, VA. Permission was provided to the Plaintiff to use the newly built

Virginia Polytechnic Institute and State University located in Alexandria, VA and

Plaintiff was told Plaintiff was more than welcomed to come to Virginia

Polytechnic Institute and State University. Plaintiff have been going just about

every day to complete some legal documents via word processing and since the

students attending Virginia Polytechnic Institute and State University are out for

the summer, the setting at Virginia Polytechnic Institute and State University has

been ideal with total quietness except the noise that has to be for cleaning of the

rooms and hallways and etc., in the evenings.

    22. It is a Fact: The week before these two incidents a male set outside

Virginia Polytechnic Institute and State University at 2:30 a.m., and appeared to be

waiting for Plaintiff to leave because as soon as Plaintiff left through the Front

Entrance, the person with a hood on his head immediately went back inside

Virginia Polytechnic Institute and State University. The same week the employee

security guard working late for Virginia Polytechnic Institute and State University

came into the workspace Plaintiff was working and asked if Plaintiff left a laptop

computer and backpack in another workspace and Plaintiff took one second and

pointed to Plaintiff's laptop Plaintiff was working on. Plaintiff also added that the computer and backpack had been there for 3-4 hours. The security guard indicated he would take care of it and Plaintiff saw the security guard remove both items. The back pack appeared to have belonged to the security guard because as Plaintiff left the back pack was sitting out behind the front desk located at the entrance of Virginia Polytechnic Institute and State University. The same week Plaintiff observed a student standing behind Plaintiff's workspace in attempt to see what Plaintiff was working on and/or to gain access to Plaintiff's laptop computer. Plaintiff quickly NEVER worked with Plaintiff's back to the outside of the workspace afterward and immediately moved to another floor. The same person came to the floor Plaintiff had moved to see where Plaintiff had moved to.

23. It is a Fact: On Friday, June 6, 2025, allegedly a professor stood very near where Plaintiff was working but was also an entrance into a nearby classroom to see what Plaintiff was working on. The second time he passed the Plaintiff, Plaintiff moved so that Plaintiff's laptop could not be viewed from outside of the workspace Plaintiff was working in.

24. It is a Fact: On Monday, June 2, 2024, Plaintiff went to Virginia Polytechnic Institute and State University for 1-Hour to complete a legal document before mailing it and when Plaintiff returned to Plaintiff's vehicle Plaintiff's vehicle had been sprayed with a chemical poisoning (to the Plaintiff). It was

11

extremely upsetting to Plaintiff, but Plaintiff quickly went to a car wash to have the

chemical poisoning washed off Plaintiff's vehicle that was on the glass surfaces

and the paint surfaces. Plaintiff did not report the problem to ANYONE at Virginia

Tech. Plaintiff returned to Virginia Polytechnic Institute and State University in the

evening on Monday, June 2, 2024, to complete more legal documents.

25. It is a Fact: On Friday, June 6, 2024, at approximately 10:30 p.m.,

Plaintiff's chosen work space at Virginia Polytechnic Institute and State University

was sprayed with a chemical and the smell was horrific. Plaintiff had gone to the

nearby restroom and took Plaintiff's unsweetened tea and Essentia water and

closed Plaintiff's document on the laptop computer because Plaintiff had a

previous warning from GOD that as soon as Plaintiff leave the workspace, entry

into the workspace is made by someone at Virginia Polytechnic Institute and State

University. The custodial staff for Virginia Polytechnic Institute and State

University were working nearby and, in the classroom, directly behind the

workspace Plaintiff was in.

26. It is a Fact: Plaintiff informed the Front Desk the following: "There are

some mean people in this world," which was related to the chemical spayed in

Plaintiff workspace room. The Front Desk black male employee replied, "And for

no reason." Plaintiff then went out to Plaintiff's vehicle to find Plaintiff's vehicle

sprayed with chemical poisoning. Plaintiff moved the vehicle from beside a vehicle

parked on the opposite side to a parking space no other vehicles were parked.

Plaintiff informed the Security guard working at the Front Desk that Plaintiff

would be returning and then went to a work space located on the second floor to

complete two applications that Plaintiff needed to mail the two detailed

applications on Saturday, June 7, 2025.

27. It is a Fact: Two security guards for the Front Desk walked pass Plaintiff

on the second floor and went to the end of the hallways and proceeded to speak as

loudly as possible. The two security guard employees left allegedly thinking the

one on duty at the time couldn't have seen Plaintiff's vehicle being sprayed with

chemical poisoning. The second black male security had left completely and/or

was not at the Front Desk. The late-night shift black male security guard arrived at

the exact time Plaintiff parked her vehicle in a different location at Virginia

Polytechnic Institute and State University and was with the Security guard Plaintiff

made the statement to about "People being mean."

28. It is a Fact: There was an individual at the entrance of Virginia

Polytechnic Institute and State University when Plaintiff left at 12:30 a.m., on early

Saturday morning, June 7, 2025. The two security guards on the second floor and

away from the security desk most likely alerted the individual standing at the

entrance of Virginia Polytechnic Institute and State University when Plaintiff was

leaving the second floor because Plaintiff saw the individual inside the vehicle

attempting to hide down in the driver's seat that was parked by Plaintiff's vehicle and allegedly took cell telephone photos of Plaintiff. Plaintiff left out from a different direction and then quickly returned to ensure Plaintiff was not mistaken about the individual hiding in the vehicle and allegedly the same person standing outside of Virginia Polytechnic Institute and State University waiting for Plaintiff to leave.

29. It is a Fact: It was early in the morning (12:30 a.m.) on June 7, 2025, so Plaintiff did not have the ability to take Plaintiff's vehicle to a carwash to remove the chemicals and had to endure inhaling the deadly chemicals (to the Plaintiff) overnight. On Saturday, June 7, 2025, later into the day Plaintiff took Plaintiff's vehicle to a carwash to have the chemicals removed from Plaintiff's vehicle.

30. It is a Fact: The employee for the carwash sprayed the soap onto the front window of Plaintiff's vehicle but not all of the glass surfaces and as he had with the car before Plaintiff's vehicle, did not use the powerful hose to hose down Plaintiff's vehicle with water. GOD made it possible by also producing rainwater to wash away the chemical poisoning sprayed onto Plaintiff's vehicle.

31. It is a Fact: Plaintiff's physical injuries include a brain injury that caused the left side of the brain to become swollen and severely injured with great pain, so much so putting on and taking off reading glasses was painful; excruciating migraine headaches, and rector bleedings to get rid of the migraine headaches. The

14

chemicals poisoning spayed into the workspace at Virginia Polytechnic Institute and State University Plaintiff was working in got into Plaintiff's hair and skin which produces an unbelievably overall bad smell on Plaintiff's person. Plaintiff is suffering EXTREME emotional distress because without GOD'S MIRACLES Plaintiff would be DEAD from the chemical poisoning. Plaintiff have provided all of the facts in this Emergency Complaint while Plaintiff worked in a workspace at Virginia Polytechnic Institute and State University, like telling a story no parts are left out but the lawsuit is about the crime of intentionally spraying Plaintiff with a chemical poisoning and intentionally spraying Plaintiff's vehicle with chemical poisoning.

32. It is a Fact: It is tortious for the Plaintiff's workspace at Virginia Polytechnic Institute and State University to be sprayed with chemical poisoning.

33. It is a Fact: It is tortious for Plaintiff's workspace at Virginia Polytechnic Institute and State University to be entered into while Plaintiff is away at the restroom, but still working in the workspace.

34. It is a Fact: It is tortious for Plaintiff's vehicle to be sprayed intentionally with chemical poisoning twice at Virginia Polytechnic Institute and State University; on Monday, June 2, 2025, and Friday, June 6, 2025, with the intent to bring about DEATH to the Plaintiff.

35. It is a Fact: It is tortious for Plaintiff to have non-stop and unwanted cell

15

photos taken of the Plaintiff by unknown individuals at Virginia Polytechnic Institute and State University. GOD alerts Plaintiff each time a cell photo is being taken.

36. It is a Fact: It is tortious for Plaintiff to be questioned by a security guard at Virginia Polytechnic Institute and State University about someone else's belongings when clearly it was known to the Security guard that Plaintiff worked on the one laptop computer carried by the Plaintiff directly by the security desk at Virginia Polytechnic Institute and State University 15-20 times prior.

37. It is a Fact: It is tortious for a student and/or a professor to allegedly attempt to look onto Plaintiff's laptop to see what Plaintiff is working on and/or to access Plaintiff's laptop computer.

38. **COUNT #1: ELEMENTS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND FACTS TO SUPPORT INTENTIONAL:**

(1) the defendant must act intentionally or recklessly;
(2) the defendant's conduct must be extreme and outrageous; and
(3) the conduct must be the cause
(4) of severe emotional distress (and possible also bodily harm)
Hyatt, 943 S.W.

39. **FACTS TO SUPPORT INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:**

40. **Intent/Recklessness:**

41. Plaintiff realleges paragraphs 1 through 37 as though fully set forth

herein.

42. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: Plaintiff is filing this "Proposed Emergency Complaint," because Plaintiff is **Beyond an Emergency State**. Plaintiff cannot live *without* food to eat or a place to stay and/or with both extremely and severely compromised with food and chemical poisoning and extreme filth and/or contamination inside a paid-for Guest Room, that Plaintiff have lived outdoors for **43-days and nights**. Plaintiff referenced the living-outdoors for **43-days and nights** and being **MOLD poisoned** at the LA/Fitness Gym located in Herndon, VA for **32 consecutive days**. These potential lawsuits such as against Fitness International LLC (Plaintiff already filed a lawsuit); **Whole Foods Market Group, Inc.** for attempted food poisoning on **Sunday, June 8, 2025**; and issues of someone from **Wegmans Food Markets, Inc.,** following Plaintiff out by Plaintiff's vehicle and taking cell photos on **Saturday, June 7, 2025**, has nothing to do with the lawsuit being filed against the Defendant, Virginia Polytechnic Institute and State University, but EVERYTHING to do with Plaintiff being BEYOND AN EMERGENCY FOR FILING A PROPOSED EMERGENCY COMPLAINT.

43. Defendant, Virginia Polytechnic Institute and State University acted with

intent or recklessness in the following manner: In May 2025, Plaintiff sought permission to complete some required Word-processing from two librarians for the Defendant, Virginia Polytechnic Institute and State University, who Plaintiff have known for over 20-Years when Plaintiff was a student at the UVA/VT Extension located in Falls Church, VA. Permission was provided to the Plaintiff to use the newly built Virginia Polytechnic Institute and State University located in Alexandria, VA and Plaintiff was told Plaintiff was more than welcomed to come to Virginia Polytechnic Institute and State University. Plaintiff have been going just about every day to complete some legal documents via word processing and since the students attending Virginia Polytechnic Institute and State University are out for the summer, the setting at Virginia Polytechnic Institute and State University has been ideal with total quietness except the noise that has to be for cleaning of the rooms and hallways and etc., in the evenings.

44. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: The week before these two incidents a male set outside Virginia Polytechnic Institute and State University at 2:30 a.m., and appeared to be waiting for Plaintiff to leave because as soon as Plaintiff left through the Front Entrance, the person with a hood on his head immediately went back inside Virginia Polytechnic Institute and State University. The same week the employee security guard working late for Virginia Polytechnic

Institute and State University came into the workspace Plaintiff was working and asked if Plaintiff left a laptop computer and backpack in another workspace and Plaintiff took one second and pointed to Plaintiff's laptop Plaintiff was working on. Plaintiff also added that the computer and backpack had been there for 3-4 hours. The security guard indicated he would take care of it and Plaintiff saw the security guard remove both items. The back pack appeared to have belonged to the security guard because as Plaintiff left the back pack was sitting out behind the front desk located at the entrance of Virginia Polytechnic Institute and State University. The same week Plaintiff observed a student standing behind Plaintiff's workspace in attempt to see what Plaintiff was working on and/or to gain access to Plaintiff's laptop computer. Plaintiff quickly NEVER worked with Plaintiff's back to the outside of the workspace afterward and immediately moved to another floor. The same person came to the floor Plaintiff had moved to see where Plaintiff had moved to.

45. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: On Friday, June 6, 2025, allegedly a professor stood very near where Plaintiff was working but was also an entrance into a nearby classroom to see what Plaintiff was working on. The second time he passed the Plaintiff, Plaintiff moved so that Plaintiff's laptop could not be viewed from outside of the workspace Plaintiff was working in.

46. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: On Monday, June 2, 2024, Plaintiff went to Virginia Polytechnic Institute and State University for 1-Hour to complete a legal document before mailing it and when Plaintiff returned to Plaintiff's vehicle Plaintiff's vehicle had been sprayed with a chemical poisoning (to the Plaintiff). It was extremely upsetting to Plaintiff, but Plaintiff quickly went to a car wash to have the chemical poisoning washed off Plaintiff's vehicle that was on the glass surfaces and the paint surfaces. Plaintiff did not report the problem to ANYONE at Virginia Tech. Plaintiff returned to Virginia Polytechnic Institute and State University in the evening on Monday, June 2, 2024, to complete more legal documents.

47. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: On Friday, June 6, 2024, at approximately 10:30 p.m., Plaintiff's chosen work space at Virginia Polytechnic Institute and State University was sprayed with a chemical and the smell was horrific. Plaintiff had gone to the nearby restroom and took Plaintiff's unsweetened tea and Essentia water and closed Plaintiff's document on the laptop computer because Plaintiff had a previous warning from GOD that as soon as Plaintiff leave the workspace, entry into the workspace is made by someone at Virginia Polytechnic Institute and State University. The custodial staff for Virginia

Polytechnic Institute and State University were working nearby and, in the classroom, directly behind the workspace Plaintiff was in.

48. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: Plaintiff informed the Front Desk the following: "There are some mean people in this world," which was related to the chemical spayed in Plaintiff workspace room. The Front Desk black male employee replied, "And for no reason." Plaintiff then went out to Plaintiff's vehicle to find Plaintiff's vehicle sprayed with chemical poisoning. Plaintiff moved the vehicle from beside a vehicle parked on the opposite side to a parking space no other vehicles were parked. Plaintiff informed the Security guard working at the Front Desk that Plaintiff would be returning and then went to a work space located on the second floor to complete two applications that Plaintiff needed to mail the two detailed applications on Saturday, June 7, 2025.

49. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: Two security guards for the Front Desk walked pass Plaintiff on the second floor and went to the end of the hallways and proceeded to speak as loudly as possible. The two security guard employees left allegedly thinking the one on duty at the time couldn't have seen Plaintiff's vehicle being sprayed with chemical poisoning. The second black male security had left completely and/or was not at the Front Desk. The late-night shift black

male security guard arrived at the exact time Plaintiff parked her vehicle in a
different location at Virginia Polytechnic Institute and State University and was
with the Security guard Plaintiff made the statement to about "People being mean."

50. Defendant, Virginia Polytechnic Institute and State University acted with
intent or recklessness in the following manner: There was an individual at the
entrance of Virginia Polytechnic Institute and State University when Plaintiff left
at 12:30 a.m., on early Saturday morning, June 7, 2025. The two security guards on
the second floor and away from the security desk most likely alerted the individual
standing at the entrance of Virginia Polytechnic Institute and State University
when Plaintiff was leaving the second floor because Plaintiff saw the individual
inside the vehicle attempting to hide down in the driver's seat that was parked by
Plaintiff's vehicle and allegedly took cell telephone photos of Plaintiff. Plaintiff
left out from a different direction and then quickly returned to ensure Plaintiff was
not mistaken about the individual hiding in the vehicle and allegedly the same
person standing outside of Virginia Polytechnic Institute and State University
waiting for Plaintiff to leave.

51. Defendant, Virginia Polytechnic Institute and State University acted with
intent or recklessness in the following manner: It was early in the morning (12:30
a.m.) on June 7, 2025, so Plaintiff did not have the ability to take Plaintiff's vehicle
to a carwash to remove the chemicals and had to endure inhaling the deadly

chemicals (to the Plaintiff) overnight. On Saturday, June 7, 2025, later into the day Plaintiff took Plaintiff's vehicle to a carwash to have the chemicals removed from Plaintiff's vehicle.

52. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: The employee for the carwash sprayed the soap onto the front window of Plaintiff's vehicle but not all of the glass surfaces and as he had with the car before Plaintiff's vehicle, did not use the powerful hose to hose down Plaintiff's vehicle with water. GOD made it possible by also producing rainwater to wash away the chemical poisoning sprayed onto Plaintiff's vehicle.

53. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: Plaintiff's physical injuries include a brain injury that caused the left side of the brain to become swollen and severely injured with great pain, so much so putting on and taking off reading glasses was painful; excruciating migraine headaches, and rector bleedings to get rid of the migraine headaches. The chemicals poisoning spayed into the workspace at Virginia Polytechnic Institute and State University Plaintiff was working in got into Plaintiff's hair and skin which produces an unbelievably overall bad smell on Plaintiff's person. Plaintiff is suffering EXTREME emotional distress because without GOD'S MIRACLES Plaintiff would be DEAD from the chemical

poisoning. Plaintiff have provided all of the facts in this Emergency Complaint while Plaintiff worked in a workspace at Virginia Polytechnic Institute and State University, like telling a story no parts are left out but the lawsuit is about the crime of intentionally spraying Plaintiff with a chemical poisoning and intentionally spraying Plaintiff's vehicle with chemical poisoning.

54. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: <u>It is tortious</u> for the Plaintiff's workspace at Virginia Polytechnic Institute and State University to be sprayed with chemical poisoning.

55. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: <u>It is tortious</u> for Plaintiff's workspace at Virginia Polytechnic Institute and State University to be entered into while Plaintiff is away at the restroom, but still working in the workspace. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: <u>It is tortious</u> for Plaintiff's vehicle to be sprayed intentionally with chemical poisoning twice at Virginia Polytechnic Institute and State University; on Monday, June 2, 2025, and Friday, June 6, 2025, with the intent to bring about DEATH to the Plaintiff.

56. Defendant, Virginia Polytechnic Institute and State University acted with

intent or recklessness in the following manner: <u>It is tortious</u> for Plaintiff to have non-stop and unwanted cell photos taken of the Plaintiff by unknown individuals at Virginia Polytechnic Institute and State University. GOD alerts Plaintiff each time a cell photo is being taken.

57. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: <u>It is tortious</u> for Plaintiff to be questioned by a security guard at Virginia Polytechnic Institute and State University about someone else's belongings when clearly it was known to the Security guard that Plaintiff worked on the one laptop computer carried by the Plaintiff directly by the security desk at Virginia Polytechnic Institute and State University 15-20 times prior.

58. Defendant, Virginia Polytechnic Institute and State University acted with intent or recklessness in the following manner: <u>It is tortious</u> for a student and/or a professor to allegedly attempt to look onto Plaintiff's laptop to see what Plaintiff is working on and/or to access Plaintiff's laptop computer.

59. **<u>Extreme and Outrageous Conduct</u>:**

60.  Plaintiff realleges paragraphs 1 through 37 as though fully set forth herein.

61. Defendant, Virginia Polytechnic Institute and State University conduct was extreme and outrageous and "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community," in the following

manner: Plaintiff is filing this "Proposed Emergency Complaint," because Plaintiff

is **Beyond an Emergency State**. Plaintiff cannot live *without* food to eat or a place

to stay and/or with both extremely and severely compromised with food and

chemical poisoning and extreme filth and/or contamination inside a paid-for Guest

Room, that Plaintiff have lived outdoors for **43-days and nights**. Plaintiff

referenced the living-outdoors for **43-days and nights** and being **MOLD poisoned**

at the LA/Fitness Gym located in Herndon, VA for **32 consecutive days**. These

potential lawsuits such as against Fitness International LLC (Plaintiff already filed

a lawsuit); **Whole Foods Market Group, Inc.** for attempted food poisoning on

**Sunday, June 8, 2025**; and issues of someone from **Wegmans Food Markets,**

**Inc.,** following Plaintiff out by Plaintiff's vehicle and taking cell photos on

**Saturday, June 7, 2025**, has nothing to do with the lawsuit being filed against the

Defendant, Virginia Polytechnic Institute and State University, but EVERYTHING

to do with Plaintiff being BEYOND AN EMERGENCY FOR FILING A

PROPOSED EMERGENCY COMPLAINT.

    62. Defendant, Virginia Polytechnic Institute and State University conduct

was extreme and outrageous and  "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community," in the following manner: In May 2025, Plaintiff sought permission to complete some required Word-processing from two librarians for the Defendant, Virginia Polytechnic Institute and State University, who Plaintiff have known for over 20-Years when Plaintiff was a student at the UVA/VT Extension located in Falls Church, VA. Permission was provided to the Plaintiff to use the newly built Virginia Polytechnic Institute and State University located in Alexandria, VA and Plaintiff was told Plaintiff was more than welcomed to come to Virginia Polytechnic Institute and State University. Plaintiff have been going just about every day to complete some legal documents via word processing and since the students attending Virginia Polytechnic Institute and State University are out for the summer, the setting at Virginia Polytechnic Institute and State University has been ideal with total quietness except the noise that has to be for cleaning of the rooms and hallways and etc., in the evenings.

63. Defendant, Virginia Polytechnic Institute and State University conduct was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," in the following manner: The week before these two incidents a male set outside Virginia Polytechnic Institute and State University at 2:30 a.m., and appeared to be waiting

27

for Plaintiff to leave because as soon as Plaintiff left through the Front Entrance, the person with a hood on his head immediately went back inside Virginia Polytechnic Institute and State University. The same week the employee security guard working late for Virginia Polytechnic Institute and State University came into the workspace Plaintiff was working and asked if Plaintiff left a laptop computer and backpack in another workspace and Plaintiff took one second and pointed to Plaintiff's laptop Plaintiff was working on. Plaintiff also added that the computer and backpack had been there for 3-4 hours. The security guard indicated he would take care of it and Plaintiff saw the security guard remove both items. The back pack appeared to have belonged to the security guard because as Plaintiff left the back pack was sitting out behind the front desk located at the entrance of Virginia Polytechnic Institute and State University. The same week Plaintiff observed a student standing behind Plaintiff's workspace in attempt to see what Plaintiff was working on and/or to gain access to Plaintiff's laptop computer. Plaintiff quickly NEVER worked with Plaintiff's back to the outside of the workspace afterward and immediately moved to another floor. The same person came to the floor Plaintiff had moved to see where Plaintiff had moved to.

64. Defendant, Virginia Polytechnic Institute and State University conduct was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community," in the following

manner: On Friday, June 6, 2025, allegedly a professor stood very near where

Plaintiff was working but was also an entrance into a nearby classroom to see what

Plaintiff was working on. The second time he passed the Plaintiff, Plaintiff moved

so that Plaintiff's laptop could not be viewed from outside of the workspace

Plaintiff was working in.

65. Defendant, Virginia Polytechnic Institute and State University conduct

was extreme and outrageous and  "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community," in the following

manner: On Monday, June 2, 2024, Plaintiff went to Virginia Polytechnic Institute

and State University for 1-Hour to complete a legal document before mailing it and

when Plaintiff returned to Plaintiff's vehicle Plaintiff's vehicle had been sprayed

with a chemical poisoning (to the Plaintiff). It was extremely upsetting to Plaintiff,

but Plaintiff quickly went to a car wash to have the chemical poisoning washed off

Plaintiff's vehicle that was on the glass surfaces and the paint surfaces. Plaintiff

did not report the problem to ANYONE at Virginia Tech. Plaintiff returned to

Virginia Polytechnic Institute and State University in the evening on Monday, June

2, 2024, to complete more legal documents.

66. Defendant, Virginia Polytechnic Institute and State University conduct

was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," in the following manner: On Friday, June 6, 2024, at approximately 10:30 p.m., Plaintiff's chosen work space at Virginia Polytechnic Institute and State University was sprayed with a chemical and the smell was horrific. Plaintiff had gone to the nearby restroom and took Plaintiff's unsweetened tea and Essentia water and closed Plaintiff's document on the laptop computer because Plaintiff had a previous warning from GOD that as soon as Plaintiff leave the workspace, entry into the workspace is made by someone at Virginia Polytechnic Institute and State University. The custodial staff for Virginia Polytechnic Institute and State University were working nearby and, in the classroom, directly behind the workspace Plaintiff was in.

67. Defendant, Virginia Polytechnic Institute and State University conduct was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," in the following manner: Plaintiff informed the Front Desk the following: "There are some mean people in this world," which was related to the chemical spayed in Plaintiff workspace room. The Front Desk black male employee replied, "And for no reason." Plaintiff then went out to Plaintiff's vehicle to find Plaintiff's vehicle

sprayed with chemical poisoning. Plaintiff moved the vehicle from beside a vehicle parked on the opposite side to a parking space no other vehicles were parked. Plaintiff informed the Security guard working at the Front Desk that Plaintiff would be returning and then went to a work space located on the second floor to complete two applications that Plaintiff needed to mail the two detailed applications on Saturday, June 7, 2025.

68. Defendant, Virginia Polytechnic Institute and State University conduct was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," in the following manner: Two security guards for the Front Desk walked pass Plaintiff on the second floor and went to the end of the hallways and proceeded to speak as loudly as possible. The two security guard employees left allegedly thinking the one on duty at the time couldn't have seen Plaintiff's vehicle being sprayed with chemical poisoning. The second black male security had left completely and/or was not at the Front Desk. The late-night shift black male security guard arrived at the exact time Plaintiff parked her vehicle in a different location at Virginia Polytechnic Institute and State University and was with the Security guard Plaintiff made the statement to about "People being mean."

69. Defendant, Virginia Polytechnic Institute and State University conduct

31

was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," in the following manner: There was an individual at the entrance of Virginia Polytechnic Institute and State University when Plaintiff left at 12:30 a.m., on early Saturday morning, June 7, 2025. The two security guards on the second floor and away from the security desk most likely alerted the individual standing at the entrance of Virginia Polytechnic Institute and State University when Plaintiff was leaving the second floor because Plaintiff saw the individual inside the vehicle attempting to hide down in the driver's seat that was parked by Plaintiff's vehicle and allegedly took cell telephone photos of Plaintiff. Plaintiff left out from a different direction and then quickly returned to ensure Plaintiff was not mistaken about the individual hiding in the vehicle and allegedly the same person standing outside of Virginia Polytechnic Institute and State University waiting for Plaintiff to leave.

70. Defendant, Virginia Polytechnic Institute and State University conduct was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," in the following manner: It was early in the morning (12:30 a.m.) on June 7, 2025, so Plaintiff did not have the ability to take Plaintiff's vehicle to a carwash to remove the chemicals

and had to endure inhaling the deadly chemicals (to the Plaintiff) overnight. On

Saturday, June 7, 2025, later into the day Plaintiff took Plaintiff's vehicle to a

carwash to have the chemicals removed from Plaintiff's vehicle.

71. Defendant, Virginia Polytechnic Institute and State University conduct

was extreme and outrageous and "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community," in the following

manner: The employee for the carwash sprayed the soap onto the front window of

Plaintiff's vehicle but not all of the glass surfaces and as he had with the car before

Plaintiff's vehicle, did not use the powerful hose to hose down Plaintiff's vehicle

with water. GOD made it possible by also producing rainwater to wash away the

chemical poisoning sprayed onto Plaintiff's vehicle.

72. Defendant, Virginia Polytechnic Institute and State University conduct

was extreme and outrageous and  "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community," in the following

manner: Plaintiff's physical injuries include a brain injury that caused the left side

of the brain to become swollen and severely injured with great pain, so much so

putting on and taking off reading glasses was painful; excruciating migraine

headaches, and rector bleedings to get rid of the migraine headaches. The

chemicals poisoning spayed into the workspace at Virginia Polytechnic Institute and State University Plaintiff was working in got into Plaintiff's hair and skin which produces an unbelievably overall bad smell on Plaintiff's person. Plaintiff is suffering EXTREME emotional distress because without GOD'S MIRACLES Plaintiff would be DEAD from the chemical poisoning. Plaintiff have provided all of the facts in this Emergency Complaint while Plaintiff worked in a workspace at Virginia Polytechnic Institute and State University, like telling a story no parts are left out but the lawsuit is about the crime of intentionally spraying Plaintiff with a chemical poisoning and intentionally spraying Plaintiff's vehicle with chemical poisoning.

73. Defendant, Virginia Polytechnic Institute and State University conduct was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," in the following manner: It is tortious for the Plaintiff's workspace at Virginia Polytechnic Institute and State University to be sprayed with chemical poisoning.

74. Defendant, Virginia Polytechnic Institute and State University conduct was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community," in the following manner: <u>It is tortious</u> for Plaintiff's workspace at Virginia Polytechnic Institute and State University to be entered into while Plaintiff is away at the restroom, but still working in the workspace.

75. Defendant, Virginia Polytechnic Institute and State University conduct was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," <u>It is tortious</u> for Plaintiff's vehicle to be sprayed intentionally with chemical poisoning twice at Virginia Polytechnic Institute and State University; on Monday, June 2, 2025, and Friday, June 6, 2025, with the intent to bring about DEATH to the Plaintiff.

76. Defendant, Virginia Polytechnic Institute and State University conduct was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," in the following manner: <u>It is tortious</u> for Plaintiff to have non-stop and unwanted cell photos taken of the Plaintiff by unknown individuals at Virginia Polytechnic Institute and State University. GOD alerts Plaintiff each time a cell photo is being taken.

77. Defendant, Virginia Polytechnic Institute and State University conduct

was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," in the following manner:  <u>It is tortious</u> for Plaintiff to be questioned by a security guard at Virginia Polytechnic Institute and State University about someone else's belongings when clearly it was known to the Security guard that Plaintiff worked on the one laptop computer carried by the Plaintiff directly by the security desk at Virginia Polytechnic Institute and State University 15-20 times prior.

Defendant, Virginia Polytechnic Institute and State University conduct was extreme and outrageous and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," in the following manner: <u>It is tortious</u> for a student and/or a professor to allegedly attempt to look onto Plaintiff's laptop to see what Plaintiff is working on and/or to access Plaintiff's laptop computer.

### 78. <u>FACTS TO SUPPORT INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>:

### 79. <u>The Conduct Must be the Cause</u>:

80. Plaintiff realleges paragraphs 1 through 37 as though fully set forth herein.

81. <u>The Conduct Must be the Cause</u> and was the cause by the Defendant, Virginia Polytechnic Institute and State University in the following manner: Plaintiff is filing this "Proposed Emergency Complaint," because Plaintiff is **Beyond an Emergency State**. Plaintiff cannot live *without* food to eat or a place to stay and/or with both extremely and severely compromised with food and chemical poisoning and extreme filth and/or contamination inside a paid-for Guest Room, that Plaintiff have lived outdoors for **43-days and nights**. Plaintiff referenced the living-outdoors for **43-days and nights** and being **MOLD poisoned** at the LA/Fitness Gym located in Herndon, VA for **32 consecutive days**. These potential lawsuits such as against Fitness International LLC (Plaintiff already filed a lawsuit); **Whole Foods Market Group, Inc.** for attempted food poisoning on **Sunday, June 8, 2025**; and issues of someone from **Wegmans Food Markets, Inc.,** following Plaintiff out by Plaintiff's vehicle and taking cell photos on **Saturday, June 7, 2025**, has nothing to do with the lawsuit being filed against the Defendant, Virginia Polytechnic Institute and State University, but EVERYTHING to do with Plaintiff being BEYOND AN EMERGENCY FOR FILING A PROPOSED EMERGENCY COMPLAINT.

82. <u>The Conduct Must be the Cause</u> and was the cause by the Defendant, Virginia Polytechnic Institute and State University in the following manner: In

May 2025, Plaintiff sought permission to complete some required Word-

processing from two librarians for the Defendant, Virginia Polytechnic Institute

and State University, who Plaintiff have known for over 20-Years when Plaintiff

was a student at the UVA/VT Extension located in Falls Church, VA. Permission

was provided to the Plaintiff to use the newly built Virginia Polytechnic Institute

and State University located in Alexandria, VA and Plaintiff was told Plaintiff was

more than welcomed to come to Virginia Polytechnic Institute and State

University. Plaintiff have been going just about every day to complete some legal

documents via word processing and since the students attending Virginia

Polytechnic Institute and State University are out for the summer, the setting at

Virginia Polytechnic Institute and State University has been ideal with total

quietness except the noise that has to be for cleaning of the rooms and hallways

and etc., in the evenings.

83. The Conduct Must be the Cause and was the cause by the Defendant,

Virginia Polytechnic Institute and State University in the following manner: The

week before these two incidents a male set outside Virginia Polytechnic Institute

and State University at 2:30 a.m., and appeared to be waiting for Plaintiff to leave

because as soon as Plaintiff left through the Front Entrance, the person with a hood

on his head immediately went back inside Virginia Polytechnic Institute and State

University. The same week the employee security guard working late for Virginia

Polytechnic Institute and State University came into the workspace Plaintiff was working and asked if Plaintiff left a laptop computer and backpack in another workspace and Plaintiff took one second and pointed to Plaintiff's laptop Plaintiff was working on. Plaintiff also added that the computer and backpack had been there for 3-4 hours. The security guard indicated he would take care of it and Plaintiff saw the security guard remove both items. The back pack appeared to have belonged to the security guard because as Plaintiff left the back pack was sitting out behind the front desk located at the entrance of Virginia Polytechnic Institute and State University. The same week Plaintiff observed a student standing behind Plaintiff's workspace in attempt to see what Plaintiff was working on and/or to gain access to Plaintiff's laptop computer. Plaintiff quickly NEVER worked with Plaintiff's back to the outside of the workspace afterward and immediately moved to another floor. The same person came to the floor Plaintiff had moved to see where Plaintiff had moved to.

84. The Conduct Must be the Cause and was the cause by the Defendant, Virginia Polytechnic Institute and State University in the following manner: On Friday, June 6, 2025, allegedly a professor stood very near where Plaintiff was working but was also an entrance into a nearby classroom to see what Plaintiff was working on. The second time he passed the Plaintiff, Plaintiff moved so that

Plaintiff's laptop could not be viewed from outside of the workspace Plaintiff was working in.

85. <u>The Conduct Must be the Cause</u> and was the cause by the Defendant, Virginia Polytechnic Institute and State University in the following manner: On Monday, June 2, 2024, Plaintiff went to Virginia Polytechnic Institute and State University for 1-Hour to complete a legal document before mailing it and when Plaintiff returned to Plaintiff's vehicle Plaintiff's vehicle had been sprayed with a chemical poisoning (to the Plaintiff). It was extremely upsetting to Plaintiff, but Plaintiff quickly went to a car wash to have the chemical poisoning washed off Plaintiff's vehicle that was on the glass surfaces and the paint surfaces. Plaintiff did not report the problem to ANYONE at Virginia Tech. Plaintiff returned to Virginia Polytechnic Institute and State University in the evening on Monday, June 2, 2024, to complete more legal documents.

86. <u>The Conduct Must be the Cause</u> and was the cause by the Defendant, Virginia Polytechnic Institute and State University in the following manner: On Friday, June 6, 2024, at approximately 10:30 p.m., Plaintiff's chosen work space at Virginia Polytechnic Institute and State University was sprayed with a chemical and the smell was horrific. Plaintiff had gone to the nearby restroom and took Plaintiff's unsweetened tea and Essentia water and closed Plaintiff's document on the laptop computer because Plaintiff had a previous warning from GOD that as

soon as Plaintiff leave the workspace, entry into the workspace is made by

someone at Virginia Polytechnic Institute and State University. The custodial staff

for Virginia Polytechnic Institute and State University were working nearby and, in

the classroom, directly behind the workspace Plaintiff was in.

87. The Conduct Must be the Cause and was the cause by the Defendant,

Virginia Polytechnic Institute and State University in the following manner:

Plaintiff informed the Front Desk the following: "There are some mean people in

this world," which was related to the chemical spayed in Plaintiff workspace room.

The Front Desk black male employee replied, "And for no reason." Plaintiff then

went out to Plaintiff's vehicle to find Plaintiff's vehicle sprayed with chemical

poisoning. Plaintiff moved the vehicle from beside a vehicle parked on the

opposite side to a parking space no other vehicles were parked. Plaintiff informed

the Security guard working at the Front Desk that Plaintiff would be returning and

then went to a work space located on the second floor to complete two applications

that Plaintiff needed to mail the two detailed applications on Saturday, June 7,

2025.

88. The Conduct Must be the Cause and was the cause by the Defendant,

Virginia Polytechnic Institute and State University in the following manner: Two

security guards for the Front Desk walked pass Plaintiff on the second floor and

went to the end of the hallways and proceeded to speak as loudly as possible. The

two security guard employees left allegedly thinking the one on duty at the time

couldn't have seen Plaintiff's vehicle being sprayed with chemical poisoning. The

second black male security had left completely and/or was not at the Front Desk.

The late-night shift black male security guard arrived at the exact time Plaintiff

parked her vehicle in a different location at Virginia Polytechnic Institute and State

University and was with the Security guard Plaintiff made the statement to about

"People being mean."

89. <u>The Conduct Must be the Cause</u> and was the cause by the Defendant,

Virginia Polytechnic Institute and State University in the following manner: There

was an individual at the entrance of Virginia Polytechnic Institute and State

University when Plaintiff left at 12:30 a.m., on early Saturday morning, June 7,

2025. The two security guards on the second floor and away from the security desk

most likely alerted the individual standing at the entrance of Virginia Polytechnic

Institute and State University when Plaintiff was leaving the second floor because

Plaintiff saw the individual inside the vehicle attempting to hide down in the

driver's seat that was parked by Plaintiff's vehicle and allegedly took cell

telephone photos of Plaintiff. Plaintiff left out from a different direction and then

quickly returned to ensure Plaintiff was not mistaken about the individual hiding in

the vehicle and allegedly the same person standing outside of Virginia Polytechnic

Institute and State University waiting for Plaintiff to leave.

90. The Conduct Must be the Cause and was the cause by the Defendant, Virginia Polytechnic Institute and State University in the following manner:  It was early in the morning (12:30 a.m.) on June 7, 2025, so Plaintiff did not have the ability to take Plaintiff's vehicle to a carwash to remove the chemicals and had to endure inhaling the deadly chemicals (to the Plaintiff) overnight. On Saturday, June 7, 2025, later into the day Plaintiff took Plaintiff's vehicle to a carwash to have the chemicals removed from Plaintiff's vehicle.

91. The Conduct Must be the Cause and was the cause by the Defendant, Virginia Polytechnic Institute and State University in the following manner: The employee for the carwash sprayed the soap onto the front window of Plaintiff's vehicle but not all of the glass surfaces and as he had with the car before Plaintiff's vehicle, did not use the powerful hose to hose down Plaintiff's vehicle with water. GOD made it possible by also producing rainwater to wash away the chemical posioning sprayed onto Plaintiff's vehicle.

92. The Conduct Must be the Cause and was the cause by the Defendant, Virginia Polytechnic Institute and State University in the following manner: Plaintiff's physical injuries include a brain injury that caused the left side of the brain to become swollen and severely injured with great pain, so much so putting on and taking off reading glasses was painful; excruciating migrane headaches, and rector bleedings to get rid of the migraine headaches. The chemicals poisoning

spayed into the workspace at Virginia Polytechnic Institute and State University

Plaintiff was working in got into Plaintiff's hair and skin which produces an

unbelievably overall bad smell on Plaintiff's person. Plaintiff is suffering

EXTREME emotional distress because without GOD'S MIRACLES Plaintiff

would be DEAD from the chemical poisoning. Plaintiff have provided all of the

facts in this Emergency Complaint while Plaintiff worked in a workspace at

Virginia Polytechnic Institute and State University, like telling a story no parts are

left out but the lawsuit is about the crime of intentionally spraying Plaintiff with a

chemical poisoning and intentionally spraying Plaintiff's vehicle with chemical

poisoning.

93. The Conduct Must be the Cause and was the cause by the Defendant,

Virginia Polytechnic Institute and State University in the following manner: It is

tortious for the Plaintiff's workspace at Virginia Polytechnic Institute and State

University to be sprayed with chemical poisoning.

94. The Conduct Must be the Cause and was the cause by the Defendant,

Virginia Polytechnic Institute and State University in the following manner: It is

tortious for Plaintiff's workspace at Virginia Polytechnic Institute and State

University to be entered into while Plaintiff is away at the restroom, but still

working in the workspace.

95. The Conduct Must be the Cause and was the cause by the Defendant,

Virginia Polytechnic Institute and State University in the following manner:  It is

tortious for Plaintiff's vehicle to be sprayed intentionally with chemical poisoning

twice at Virginia Polytechnic Institute and State University; on Monday, June 2,

2025, and Friday, June 6, 2025, with the intent to bring about DEATH to the

Plaintiff.

96. The Conduct Must be the Cause and was the cause by the Defendant,

Virginia Polytechnic Institute and State University in the following manner: It is

tortious for Plaintiff to have non-stop and unwanted cell photos taken of the

Plaintiff by unknown individuals at Virginia Polytechnic Institute and State

University. GOD alerts Plaintiff each time a cell photo is being taken.

The Conduct Must be the Cause and was the cause by the Defendant, Virginia

Polytechnic Institute and State University in the following manner: It is tortious for

Plaintiff to be questioned by a security guard at Virginia Polytechnic Institute and

State University about someone else's belongings when clearly it was known to the

Security guard that Plaintiff worked on the one laptop computer carried by the

Plaintiff directly by the security desk at Virginia Polytechnic Institute and State

University 15-20 times prior.

97. The Conduct Must be the Cause and was the cause by the Defendant,

Virginia Polytechnic Institute and State University in the following manner: It is

tortious for a student and/or a professor to allegedly attempt to look onto Plaintiff's

45

laptop to see what Plaintiff is working on and/or to access Plaintiff's laptop computer.

## FACTS TO SUPPORT INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:

98. **Severe Emotional Distress:**

99. Plaintiff realleges paragraphs 1 through 37 as though fully set forth herein.

100.     The Defendant, Virginia Polytechnic Institute and State University caused the Plaintiff severe Emotional Distress in the following manner: Plaintiff is filing this "Proposed Emergency Complaint," because Plaintiff is **Beyond an Emergency State.** Plaintiff cannot live *without* food to eat or a place to stay and/or with both extremely and severely compromised with food and chemical poisoning and extreme filth and/or contamination inside a paid-for Guest Room, that Plaintiff have lived outdoors for **43-days and nights.** Plaintiff referenced the living-outdoors for **43-days and nights** and being **MOLD poisoned** at the LA/Fitness Gym located in Herndon, VA for **32 consecutive days.** These potential lawsuits such as against Fitness International LLC (Plaintiff already filed a lawsuit); **Whole Foods Market Group, Inc.** for attempted food poisoning on **Sunday, June 8, 2025;** and issues of someone from **Wegmans Food Markets, Inc.,** following Plaintiff out by Plaintiff's vehicle and taking cell photos on **Saturday, June 7, 2025,** has nothing to do with the lawsuit being filed against the Defendant, Virginia

Polytechnic Institute and State University, but EVERYTHING to do with Plaintiff

being BEYOND AN EMERGENCY FOR FILING A PROPOSED EMERGENCY

COMPLAINT.

101.     The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner:  In May

2025, Plaintiff sought permission to complete some required Word-processing

from two librarians for the Defendant, Virginia Polytechnic Institute and State

University, who Plaintiff have known for over 20-Years when Plaintiff was a

student at the UVA/VT Extension located in Falls Church, VA. Permission was

provided to the Plaintiff to use the newly built Virginia Polytechnic Institute

and State University located in Alexandria, VA and Plaintiff was told Plaintiff

was more than welcomed to come to Virginia Polytechnic Institute and State

University. Plaintiff have been going just about every day to complete some

legal documents via word processing and since the students attending Virginia

Polytechnic Institute and State University are out for the summer, the setting at

Virginia Polytechnic Institute and State University has been ideal with total

quietness except the noise that has to be for cleaning of the rooms and hallways

and etc., in the evenings.

102.     The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner: The week before these two incidents a male set outside Virginia Polytechnic Institute and State University at 2:30 a.m., and appeared to be waiting for Plaintiff to leave because as soon as Plaintiff left through the Front Entrance, the person with a hood on his head immediately went back inside Virginia Polytechnic Institute and State University. The same week the employee security guard working late for Virginia Polytechnic Institute and State University came into the workspace Plaintiff was working and asked if Plaintiff left a laptop computer and backpack in another workspace and Plaintiff took one second and pointed to Plaintiff's laptop Plaintiff was working on. Plaintiff also added that the computer and backpack had been there for 3-4 hours. The security guard indicated he would take care of it and Plaintiff saw the security guard remove both items. The back pack appeared to have belonged to the security guard because as Plaintiff left the back pack was sitting out behind the front desk located at the entrance of Virginia Polytechnic Institute and State University. The same week Plaintiff observed a student standing behind Plaintiff's workspace in attempt to see what Plaintiff was working on and/or to gain access to Plaintiff's laptop computer. Plaintiff quickly NEVER worked with Plaintiff's back to the outside of the workspace afterward and immediately moved to another floor. The same person came to the floor Plaintiff had moved to see where Plaintiff had moved to.

103.     The Defendant, Virginia Polytechnic Institute and State University caused the Plaintiff severe Emotional Distress in the following manner: On Friday, June 6, 2025, allegedly a professor stood very near where Plaintiff was working but was also an entrance into a nearby classroom to see what Plaintiff was working on. The second time he passed the Plaintiff, Plaintiff moved so that Plaintiff's laptop could not be viewed from outside of the workspace Plaintiff was working in.

104.     The Defendant, Virginia Polytechnic Institute and State University caused the Plaintiff severe Emotional Distress in the following manner: On Monday, June 2, 2024, Plaintiff went to Virginia Polytechnic Institute and State University for 1-Hour to complete a legal document before mailing it and when Plaintiff returned to Plaintiff's vehicle Plaintiff's vehicle had been sprayed with a chemical poisoning (to the Plaintiff). It was extremely upsetting to Plaintiff, but Plaintiff quickly went to a car wash to have the chemical poisoning washed off Plaintiff's vehicle that was on the glass surfaces and the paint surfaces. Plaintiff did not report the problem to ANYONE at Virginia Tech. Plaintiff returned to Virginia Polytechnic Institute and State University in the evening on Monday, June 2, 2024, to complete more legal documents.

105.     The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner: in the following manner: On Friday, June 6, 2024, at approximately 10:30 p.m., Plaintiff's chosen work space at Virginia Polytechnic Institute and State University was sprayed with a chemical and the smell was horrific. Plaintiff had gone to the nearby restroom and took Plaintiff's unsweetened tea and Essentia water and closed Plaintiff's document on the laptop computer because Plaintiff had a previous warning from GOD that as soon as Plaintiff leave the workspace, entry into the workspace is made by someone at Virginia Polytechnic Institute and State University. The custodial staff for Virginia Polytechnic Institute and State University were working nearby and, in the classroom, directly behind the workspace Plaintiff was in.

106.     The Defendant, Virginia Polytechnic Institute and State University caused the Plaintiff severe Emotional Distress in the following manner: Plaintiff informed the Front Desk the following: "There are some mean people in this world," which was related to the chemical spayed in Plaintiff workspace room. The Front Desk black male employee replied, "And for no reason." Plaintiff then went out to Plaintiff's vehicle to find Plaintiff's vehicle sprayed with chemical poisoning. Plaintiff moved the vehicle from beside a vehicle parked on the opposite side to a parking space no other vehicles were parked. Plaintiff informed the Security guard working at the Front Desk that Plaintiff would be returning and

then went to a work space located on the second floor to complete two applications

that Plaintiff needed to mail the two detailed applications on Saturday, June 7,

2025.

107.    The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner:  Two

security guards for the Front Desk walked pass Plaintiff on the second floor and

went to the end of the hallways and proceeded to speak as loudly as possible. The

two security guard employees left allegedly thinking the one on duty at the time

couldn't have seen Plaintiff's vehicle being sprayed with chemical poisoning. The

second black male security had left completely and/or was not at the Front Desk.

The late-night shift black male security guard arrived at the exact time Plaintiff

parked her vehicle in a different location at Virginia Polytechnic Institute and State

University and was with the Security guard Plaintiff made the statement to about

"People being mean."

108.    The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner: There was

an individual at the entrance of Virginia Polytechnic Institute and State University

when Plaintiff left at 12:30 a.m., on early Saturday morning, June 7, 2025. The two

security guards on the second floor and away from the security desk most likely

alerted the individual standing at the entrance of Virginia Polytechnic Institute and

State University when Plaintiff was leaving the second floor because Plaintiff saw the individual inside the vehicle attempting to hide down in the driver's seat that was parked by Plaintiff's vehicle and allegedly took cell telephone photos of Plaintiff. Plaintiff left out from a different direction and then quickly returned to ensure Plaintiff was not mistaken about the individual hiding in the vehicle and allegedly the same person standing outside of Virginia Polytechnic Institute and State University waiting for Plaintiff to leave.

109.     The Defendant, Virginia Polytechnic Institute and State University caused the Plaintiff severe Emotional Distress in the following manner: It was early in the morning (12:30 a.m.) on June 7, 2025, so Plaintiff did not have the ability to take Plaintiff's vehicle to a carwash to remove the chemicals and had to endure inhaling the deadly chemicals (to the Plaintiff) overnight. On Saturday, June 7, 2025, later into the day Plaintiff took Plaintiff's vehicle to a carwash to have the chemicals removed from Plaintiff's vehicle.

110.     The Defendant, Virginia Polytechnic Institute and State University caused the Plaintiff severe Emotional Distress in the following manner: The employee for the carwash sprayed the soap onto the front window of Plaintiff's vehicle but not all of the glass surfaces and as he had with the car before Plaintiff's vehicle, did not use the powerful hose to hose down Plaintiff's vehicle with water.

GOD made it possible by also producing rainwater to wash away the chemical poisoning sprayed onto Plaintiff's vehicle.

111.     The Defendant, Virginia Polytechnic Institute and State University caused the Plaintiff severe Emotional Distress in the following manner:  <u>Plaintiff's physical injuries</u> include a brain injury that caused the left side of the brain to become swollen and severely injured with great pain, so much so putting on and taking off reading glasses was painful; excruciating migraine headaches, and rector bleedings to get rid of the migraine headaches. The chemicals poisoning spayed into the workspace at Virginia Polytechnic Institute and State University Plaintiff was working in got into Plaintiff's hair and skin which produces an unbelievably overall bad smell on Plaintiff's person. Plaintiff is suffering EXTREME emotional distress because without GOD'S MIRACLES Plaintiff would be DEAD from the chemical poisoning. Plaintiff have provided all of the facts in this Emergency Complaint while Plaintiff worked in a workspace at Virginia Polytechnic Institute and State University, like telling a story no parts are left out but the lawsuit is about the crime of intentionally spraying Plaintiff with a chemical poisoning and intentionally spraying Plaintiff's vehicle with chemical poisoning.

112.     The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner:  It is

tortious for the Plaintiff's workspace at Virginia Polytechnic Institute and State

University to be sprayed with chemical poisoning.

113.    The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner:  It is

tortious for Plaintiff's workspace at Virginia Polytechnic Institute and State

University to be entered into while Plaintiff is away at the restroom, but still

working in the workspace.

114.    The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner:   It is

tortious for Plaintiff's vehicle to be sprayed intentionally with chemical poisoning

twice at Virginia Polytechnic Institute and State University; on Monday, June 2,

2025, and Friday, June 6, 2025, with the intent to bring about DEATH to the

Plaintiff.

115.    The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner: It is

tortious for Plaintiff to have non-stop and unwanted cell photos taken of the

Plaintiff by unknown individuals at Virginia Polytechnic Institute and State

University. GOD alerts Plaintiff each time a cell photo is being taken.

116.    The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner: It is

tortious for Plaintiff to be questioned by a security guard at Virginia Polytechnic

Institute and State University about someone else's belongings when clearly it was

known to the Security guard that Plaintiff worked on the one laptop computer

carried by the Plaintiff directly by the security desk at Virginia Polytechnic

Institute and State University 15-20 times prior.

117.    The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner: It is

tortious for a student and/or a professor to allegedly attempt to look onto Plaintiff's

laptop to see what Plaintiff is working on and/or to access Plaintiff's laptop

computer.

118.    **CLAIM #1: ELEMENTS FOR PUNITIVE DAMAGES AND**

**FACTS TO SUPPORT PUNITIVE DAMAGES:**

119.    **ELEMENTS FOR PUNITIVE DAMAGES:**

120.    Plaintiff realleges paragraphs 1 through 37 as though fully set forth
herein.

121.    Punitive Damages may only be awarded where there is

misconduct or actual malice, or such recklessness or negligence as to evince a

conscious disregard of the rights of others. *Giant of Virginia v. Pigg*, 207 Va. 679,

685-86 (1967)."

122.     The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner: Plaintiff is filing this "Proposed Emergency Complaint," because Plaintiff is **Beyond an Emergency State**. Plaintiff cannot live *without* food to eat or a place to stay and/or with both extremely and severely compromised with food and chemical poisoning and extreme filth and/or contamination inside a paid-for Guest Room, that Plaintiff have lived outdoors for **43-days and nights**. Plaintiff referenced the living-outdoors for **43-days and nights** and being **MOLD poisoned** at the LA/Fitness Gym located in Herndon, VA for **32 consecutive days**. These potential lawsuits such as against Fitness International LLC (Plaintiff already filed a lawsuit); **Whole Foods Market Group, Inc.** for attempted food poisoning on **Sunday, June 8, 2025**; and issues of someone from **Wegmans Food Markets, Inc.,** following Plaintiff out by Plaintiff's vehicle and taking cell photos on **Saturday, June 7, 2025**, has nothing to do with the lawsuit being filed against the Defendant, Virginia Polytechnic Institute and State University, but EVERYTHING to do with Plaintiff being BEYOND AN EMERGENCY FOR FILING A PROPOSED EMERGENCY COMPLAINT.

123.     The Defendant, Virginia Polytechnic Institute and State University

misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner:  In May 2025, Plaintiff sought permission to complete some required Word-processing from two librarians for the Defendant, Virginia Polytechnic Institute and State University, who Plaintiff have known for over 20-Years when Plaintiff was a student at the UVA/VT Extension located in Falls Church, VA. Permission was provided to the Plaintiff to use the newly built Virginia Polytechnic Institute and State University located in Alexandria, VA and Plaintiff was told Plaintiff was more than welcomed to come to Virginia Polytechnic Institute and State University. Plaintiff have been going just about every day to complete some legal documents via word processing and since the students attending Virginia Polytechnic Institute and State University are out for the summer, the setting at Virginia Polytechnic Institute and State University has been ideal with total quietness except the noise that has to be for cleaning of the rooms and hallways and etc., in the evenings.

124.    The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner: The week before these two incidents a male set outside Virginia Polytechnic Institute and State University at 2:30 a.m., and appeared to be waiting for Plaintiff to leave because as soon as Plaintiff left through the Front Entrance, the person with a hood

on his head immediately went back inside Virginia Polytechnic Institute and State University. The same week the employee security guard working late for Virginia Polytechnic Institute and State University came into the workspace Plaintiff was working and asked if Plaintiff left a laptop computer and backpack in another workspace and Plaintiff took one second and pointed to Plaintiff's laptop Plaintiff was working on. Plaintiff also added that the computer and backpack had been there for 3-4 hours. The security guard indicated he would take care of it and Plaintiff saw the security guard remove both items. The back pack appeared to have belonged to the security guard because as Plaintiff left the back pack was sitting out behind the front desk located at the entrance of Virginia Polytechnic Institute and State University. The same week Plaintiff observed a student standing behind Plaintiff's workspace in attempt to see what Plaintiff was working on and/or to gain access to Plaintiff's laptop computer. Plaintiff quickly NEVER worked with Plaintiff's back to the outside of the workspace afterward and immediately moved to another floor. The same person came to the floor Plaintiff had moved to see where Plaintiff had moved to.

125.    The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner: On Friday, June 6, 2025, allegedly a professor stood very near where Plaintiff was working

but was also an entrance into a nearby classroom to see what Plaintiff was working on. The second time he passed the Plaintiff, Plaintiff moved so that Plaintiff's laptop could not be viewed from outside of the workspace Plaintiff was working in.

126.    The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner: On Monday, June 2, 2024, Plaintiff went to Virginia Polytechnic Institute and State University for 1-Hour to complete a legal document before mailing it and when Plaintiff returned to Plaintiff's vehicle Plaintiff's vehicle had been sprayed with a chemical poisoning (to the Plaintiff). It was extremely upsetting to Plaintiff, but Plaintiff quickly went to a car wash to have the chemical poisoning washed off Plaintiff's vehicle that was on the glass surfaces and the paint surfaces. Plaintiff did not report the problem to ANYONE at Virginia Tech. Plaintiff returned to Virginia Polytechnic Institute and State University in the evening on Monday, June 2, 2024, to complete more legal documents.

127.    The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner: On Friday, June 6, 2024, at approximately 10:30 p.m., Plaintiff's chosen work space at

Virginia Polytechnic Institute and State University was sprayed with a chemical and the smell was horrific. Plaintiff had gone to the nearby restroom and took Plaintiff's unsweetened tea and Essentia water and closed Plaintiff's document on the laptop computer because Plaintiff had a previous warning from GOD that as soon as Plaintiff leave the workspace, entry into the workspace is made by someone at Virginia Polytechnic Institute and State University. The custodial staff for Virginia Polytechnic Institute and State University were working nearby and, in the classroom, directly behind the workspace Plaintiff was in.

128.     The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner: Plaintiff informed the Front Desk the following: "There are some mean people in this world," which was related to the chemical spayed in Plaintiff workspace room. The Front Desk black male employee replied, "And for no reason." Plaintiff then went out to Plaintiff's vehicle to find Plaintiff's vehicle sprayed with chemical poisoning. Plaintiff moved the vehicle from beside a vehicle parked on the opposite side to a parking space no other vehicles were parked. Plaintiff informed the Security guard working at the Front Desk that Plaintiff would be returning and then went to a work space located on the second floor to complete two applications

that Plaintiff needed to mail the two detailed applications on Saturday, June 7, 2025.

129.    The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner:  Two security guards for the Front Desk walked pass Plaintiff on the second floor and went to the end of the hallways and proceeded to speak as loudly as possible. The two security guard employees left allegedly thinking the one on duty at the time couldn't have seen Plaintiff's vehicle being sprayed with chemical poisoning. The second black male security had left completely and/or was not at the Front Desk. The late-night shift black male security guard arrived at the exact time Plaintiff parked her vehicle in a different location at Virginia Polytechnic Institute and State University and was with the Security guard Plaintiff made the statement to about "People being mean."

130.     The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner: There was an individual at the entrance of Virginia Polytechnic Institute and State University when Plaintiff left at 12:30 a.m., on early Saturday morning, June 7, 2025. The two security guards on the second floor and away from the security desk most likely

alerted the individual standing at the entrance of Virginia Polytechnic Institute and State University when Plaintiff was leaving the second floor because Plaintiff saw the individual inside the vehicle attempting to hide down in the driver's seat that was parked by Plaintiff's vehicle and allegedly took cell telephone photos of Plaintiff. Plaintiff left out from a different direction and then quickly returned to ensure Plaintiff was not mistaken about the individual hiding in the vehicle and allegedly the same person standing outside of Virginia Polytechnic Institute and State University waiting for Plaintiff to leave.

131.    The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner: It was early in the morning (12:30 a.m.) on June 7, 2025, so Plaintiff did not have the ability to take Plaintiff's vehicle to a carwash to remove the chemicals and had to endure inhaling the deadly chemicals (to the Plaintiff) overnight. On Saturday, June 7, 2025, later into the day Plaintiff took Plaintiff's vehicle to a carwash to have the chemicals removed from Plaintiff's vehicle.

132.    The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner: The employee for the carwash sprayed the soap onto the front window of Plaintiff's vehicle but

not all of the glass surfaces and as he had with the car before Plaintiff's vehicle,
did not use the powerful hose to hose down Plaintiff's vehicle with water. GOD
made it possible by also producing rainwater to wash away the chemical poisoning
sprayed onto Plaintiff's vehicle.

133.    The Defendant, Virginia Polytechnic Institute and State University c
misconduct or actual malice, or such recklessness or negligence as to evince a
conscious disregard of the rights of others in the following manner:  <u>Plaintiff's
physical injuries</u> include a brain injury that caused the left side of the brain to
become swollen and severely injured with great pain, so much so putting on and
taking off reading glasses was painful; excruciating migraine headaches, and rector
bleedings to get rid of the migraine headaches. The chemicals poisoning spayed
into the workspace at Virginia Polytechnic Institute and State University Plaintiff
was working in got into Plaintiff's hair and skin which produces an unbelievably
overall bad smell on Plaintiff's person. Plaintiff is suffering EXTREME emotional
distress because without GOD'S MIRACLES Plaintiff would be DEAD from the
chemical poisoning. Plaintiff have provided all of the facts in this Emergency
Complaint while Plaintiff worked in a workspace at Virginia Polytechnic Institute
and State University, like telling a story no parts are left out but the lawsuit is
about the crime of intentionally spraying Plaintiff with a chemical poisoning and
intentionally spraying Plaintiff's vehicle with chemical poisoning.

134.    The Defendant, Virginia Polytechnic Institute and State University

misconduct or actual malice, or such recklessness or negligence as to evince a

conscious disregard of the rights of others in the following manner:  It is tortious

for the Plaintiff's workspace at Virginia Polytechnic Institute and State University

to be sprayed with chemical poisoning.

135.    The Defendant, Virginia Polytechnic Institute and State University

misconduct or actual malice, or such recklessness or negligence as to evince a

conscious disregard of the rights of others in the following manner:  It is tortious

for Plaintiff's workspace at Virginia Polytechnic Institute and State University to

be entered into while Plaintiff is away at the restroom, but still working in the

workspace.

136.    The Defendant, Virginia Polytechnic Institute and State University

caused the Plaintiff severe Emotional Distress in the following manner:  It is

tortious for Plaintiff's vehicle to be sprayed intentionally with chemical poisoning

twice at Virginia Polytechnic Institute and State University; on Monday, June 2,

2025, and Friday, June 6, 2025, with the intent to bring about DEATH to the

Plaintiff.

137.    The Defendant, Virginia Polytechnic Institute and State University

misconduct or actual malice, or such recklessness or negligence as to evince a

conscious disregard of the rights of others in the following manner: It is tortious

for Plaintiff to have non-stop and unwanted cell photos taken of the Plaintiff by unknown individuals at Virginia Polytechnic Institute and State University. GOD alerts Plaintiff each time a cell photo is being taken.

138.    The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner: It is tortious for Plaintiff to be questioned by a security guard at Virginia Polytechnic Institute and State University about someone else's belongings when clearly it was known to the Security guard that Plaintiff worked on the one laptop computer carried by the Plaintiff directly by the security desk at Virginia Polytechnic Institute and State University 15-20 times prior.

139.    The Defendant, Virginia Polytechnic Institute and State University misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others in the following manner: It is tortious for a student and/or a professor to allegedly attempt to look onto Plaintiff's laptop to see what Plaintiff is working on and/or to access Plaintiff's laptop computer.

140.    **SUMMARY:**

141.    Plaintiff was and/or is subjected to actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others of intentional harmful and unlawful actions when Plaintiff was INTENTIONALLY

65

chemical poisoned and Plaintiff's vehicle was INTENTIONALLY sprayed with chemical poisoning.

142.    This Proposed Emergency Complaint is BEYOND an Emergency and Plaintiff kindly ask that the Proposed Emergency Complaint is Expedited because the Defendant, Virginia Polytechnic Institute and State University caused serious HARM to the Plaintiff both physically and emotionally.

143.    WHEREFORE, this Plaintiff claims ($2 BILLION DOLLARS) TWO BILLION DOLLARS and whatever else this Honorable Court deems appropriate.

Respectfully Yours,

Dora L. Adkins, *pro se*

<u>ADDENDUM</u>

<u>COMPENSATORY DAMAGES:</u>

1.    "In accord with the foregoings, Plaintiff claim damages against Defendant as follows:"
    A. Compensatory Damages: TOTAL = Approximately $4,070.00 (<u>NOT INCLUDED</u>):
        (i)    "Cost for Medicine for Migraine Headaches" approximately $12.00 (Already purchased)


<u>Note:</u> The Plaintiff reserves the right to amend the compensatory (which was not added in) and the amounts for Intentional Infliction of Emotional Distress; and a Claim for Punitive Damages as a *Prima Facie* Case.

B.    DAMAGES: $2 BILLION TOTAL: ONE BILLION DOLLARS for: <u>Count #1</u>: Intentional Infliction of Emotional Distress; ONE BILLION DOLLARS for <u>Claim #1</u> for Punitive Damages.
<u>Damages</u> - means the amount of compensation the Plaintiff is seeking in for <u>Count #1</u>: Tort of Intentional Infliction of Emotional Distress; <u>Claim #1</u>: for Punitive is TWO BILLION DOLLARS in Damages as a *Prima Facie* Case.

JURY DEMANDED

2.    Trial by jury is demanded.
    WHEREFORE, Plaintiff demands judgment against the defendant, in the

TOTAL AMOUNT OF $2 BILLION: ONE BILLION DOLLARS for: <u>Count #1</u>:

Intentional Infliction of Emotional Distress; ONE BILLION DOLLARS for <u>Claim #1</u> for Punitive Damages; as a *Prima Facie* Case and/or whatever else the Court

deem appropriate.

Respectfully Yours,

Dora L. Adkins, *pro se*

Dora L. Adkins
P.O. Box 3825
Merrifield, Virginia 22116
DoraAdkins7@aol.com
No Telephone

 Note: There is no way to contact the Plaintiff; except, by U.S. Mail to the above address because there is no working telephone number(s) to provide.


## **EXHIBITS:**

**EXHIBIT #I**: *See*, Copy of Receipt for Car Wash on June 2, 2025

**EXHIBT #II**: *See*, Copy of Receipt for Car Wash on June 6, 2025

## **CERTIFICATE OF SERVICE:**

I certify that on June 9, 2025, I filed a Proposed Emergency Complaint,

against Defendant, Virginia Polytechnic Institute and State University.

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERISTY
REGISTERED AGENT / REGISTERED OFFICE
Virginia Polytechnic Institute and State University
PO Box 482
Blacksburg, VA 24068

Respectfully Yours,

Dora L. Adkins, *pro se*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DORA L. ADKINS,


      Plaintiff, (*pro se*)

      v.     <u>Civil Action No.</u>

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERISTY


      Defendant.

## CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared or assisted in the preparation of this document.

<u>Dora L. Adkins</u>

<u>Name of Pro Se Party (Print or Type)</u>

<u>Executed on June 9, 2025 (Date)</u>

**OR**

<u>Dora L. Adkins</u>

<u>(Name of Attorney)</u>

<u>No Telephone Number</u>

<u>(Telephone Number of Attorney)</u>

<u>Prepared or assisted in preparation of this document.</u>

<u>Dora L. Adkins</u>

<u>Name of Pro Se Party (Print or Type)</u>

<u>Signature of Pro Se Party (Print or Type)</u>

<u>Executed on June 9, 2025 (Date)</u>

**Flagship Carwash-FLAG018**
**7333 Little River Turnpike**
**Annandale, VA 22003**
703-902-0434
6/2/2025 12:48 PM

**A86434**

Basic Wash: 15.00
Tax: 0.00

Total: 15.00
Change: 0.00

**CREDIT CARD Sale**

*Exhibit # 1*

**Flagship Carwash-FLAG018**
**7333 Little River Turnpike**
**Annandale, VA 22003**
703-902-0434
6/7/2025 5:47 PM

**A87142**

Basic Wash: 15.00
Tax: 0.00

Total: 15.00
Change: 0.00

**CREDIT CARD Sale**

*Exhibit #2*